UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GEORDON DENNIS,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **No. 15-690** |
| **ESS SUPPORT SERVICES**<br>**WORLDWIDE, ET AL**<br>    **Defendants** | **SECTION "E"(4)** |

## ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed by Defendant, S.H.R.M. Catering Services, Inc. d/b/a/ Eurest Support Services ("ESS").[1] ESS seeks summary judgment on Plaintiff Geordon Dennis' maintenance-and-cure claim under the Fifth Circuit's decision in *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968).[2] The motion is opposed.[3] The Court deferred its consideration of the motion pursuant to Rule 56(d) to permit plaintiff to conduct certain additional discovery.[4] ESS timely re-urged the motion pursuant to the Court's orders, Plaintiff timely responded, and the motion is now before the Court on the briefs and without oral argument.[5] For the reasons that follow, the Court denies ESS' motion.

## BACKGROUND

This is a maritime personal injury case. Plaintiff Geordon Dennis ("Dennis") claims that, on or about September 21, 2014, he suffered injuries while working for ESS on board a vessel owned and maintained by Seadrill Americas, Inc.[6] While Plaintiff's complaint

---

[1] R. Doc. 40.
[2] *See* R. Docs. 40-1, 52 & 55.
[3] R. Docs. 42, 48, & 60.
[4] R. Doc. 53.
[5] R. Docs. 55 & 60.
[6] R. Doc. 1.

1

does not make it explicit, the parties apparently agree that Dennis worked aboard the rig SEVAN LOUISIANA as a utility hand and that his claims against Defendants center on the allegation that he fell out of his top bunk, which Dennis asserts should have had a guard rail.[7] Dennis initially alleged injuries to his head, neck, and back and later claimed injuries to his right ankle.[8] Dennis has made maintenance and cure claims against ESS.[9] Dennis filed the instant lawsuit on March 4, 2015, asserting causes of action for negligence, unseaworthiness, and maintenance and cure, as well as punitive damages for the willful and wanton failure to pay maintenance and cure.[10]

ESS originally filed this motion for partial summary judgment on Dennis' maintenance and cure claims on March 7, 2016. ESS argues Dennis is not entitled to maintenance and cure, because recovery for his alleged ankle injury is precluded under *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547 (5th Cir. 1968) and because he has reached maximum medical cure on his other alleged injuries.[11] ESS argues that Dennis intentionally concealed evidence of a significant pre-existing injury to his ankle, the disclosure of which would have materially impacted ESS' decision to hire Dennis and which is causally related to his current alleged ankle injury. With ESS' liability for Dennis' alleged ankle injury precluded by a *McCorpen* defense, ESS argues that Dennis is wholly precluded from bring a maintenance and cure claim, because has achieved maximum medical cure on his other alleged injuries.[12] Furthermore, ESS seeks a ruling that Dennis

---

[7] R. Docs. 40-2 at 2, 40-4 at 5, & 42-2 at 1.; s*ee also generally* R. Doc. 44.
[8] *Id.*
[9] *Id.*
[10] R. Doc. 1.
[11] *See* R. Doc. 40-1 at 12–16.
[12] *See id.* at 17–18; *see also* R. Doc. 55 at 15. ESS initially sought a determination that Dennis has also reached medical maximum cure on his ankle injury; however, ESS' supplemental memorandum re-urging summary judgment apparently concedes that "plaintiff may be able to argue that Dr. Bostick has done enough to create confusion over whether plaintiff is at the point of maximum medical cure with respect to his alleged right ankle injury." R. Doc. 55 at 15.

may not seek punitive damages related to Defendant's payment of maintenance and cure or lack thereof, because ESS has paid Dennis maintenance payments and has reasonably relied on treating physicians in determining that Dennis has no cure issue.[13]

On April 28, 2016, the Court denied ESS' motion for summary judgment without prejudice, finding that pertinent discovery was still on-going as to the relation between Dennis' prior ankle injury and his alleged ankle injury.[14]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] "An issue is material if its resolution could affect the outcome of the action."[16] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[17] All reasonable inferences are drawn in favor of the non-moving party.[18] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[19]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[20] If the

---

[13] R. Docs. 40-1 at 18–19 & 55 at 16.
[14] R. Doc. 53.
[15] Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[16] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[17] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[18] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[19] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[20] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).

3

moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[21]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, as in this case, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[22] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[23] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[24] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[25]

---

[21] *Celotex*, 477 U.S. at 322–24.
[22] *Id.* at 331–32 (Brennan, J., dissenting).
[23] *See id.* at 332.
[24] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.
[25] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and internal quotation marks omitted).

**LAW AND ANALYSIS**

*I.* McCorpen *Defense*

ESS maintains, under the Fifth Circuit's decision in *McCorpen*, that Dennis is not entitled to be paid maintenance and cure with regard to his alleged right ankle injury because he concealed a prior right ankle fracture from ESS.[26] "Maintenance and cure is a contractual form of compensation afforded by the general maritime law to seamen who fall ill or are injured while in the service of a vessel."[27] A seaman's employer may, however, rely on certain legal defenses, such as the "*McCorpen* defense," to deny claims for maintenance and cure.[28]

In *McCorpen*, the Fifth Circuit concluded that, while maintenance and cure may be awarded to a seaman who has suffered from a pre-existing injury, a seaman forfeits his or her right to maintenance and cure when he or she fails to disclose certain medical facts, or misrepresents those facts, when asked about them in connection with an employment application.[29] An employer will prevail on this defense, absolving the employer of its obligation to an injured seaman, by establishing: (1) the seaman intentionally concealed or misrepresented information concerning a prior medical condition or injury; (2) the misrepresented or concealed information was material to the employer's decision to hire

---

[26] *See generally* R. Docs. 40-1 & 55.
[27] *Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006).
[28] *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005). *See also Lett v. Omega Protein, Inc.*, 487 F. App'x 839, 848 (5th Cir. 2012).
[29] *McCorpen v. Central Gulf Steamship Corp.*, 396 F.2d 547, 549 (5th Cir.), *cert. denied*, 393 U.S. 894 (1968). *See also Brown*, 410 F.3d at 170–71, 73 (quoting *McCorpen*, 396 F.2d at 549 ("[W]here the [employer] requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired, then he is not entitled to an award of maintenance and cure.")).

the seaman; and (3) a causal connection between the non-disclosed injury or condition and an injury or condition complained of in the suit at bar.[30]

ESS, as the party seeking summary judgment, has the burden of establishing there are no material facts in dispute and, therefore, ESS is entitled to judgment as a matter of law on Dennis' maintenance-and-cure claim. ESS' summary-judgment burden, as applied to the *McCorpen* defense, requires ESS to establish the absence of disputed material facts with respect to each of the three prongs of the defense. ESS is unable to do so with respect to *McCorpen*'s third prong, meaning summary judgment must be denied.

A. Concealment

The first prong of the *McCorpen* defense—the "intentional concealment" prong—is "an essentially objective inquiry," and does not require a finding of subjective intent to conceal or misrepresent medical information on the part of the seaman.[31] "*McCorpen*'s intentional concealment prong neither necessarily turns on credibility nor requires a subjective determination."[32] "Failure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information satisfies the 'intentional concealment' requirement."[33] In this case, the parties disagree on the application of this prong of the *McCorpen* defense.

ESS points to an April 24, 2013, medical report, signed and initialed by Dennis that clearly diagnoses a "fracture right fibula (lateral malleolar fracture) (with subluxation)."[34]

---

[30] *McCorpen*, 396 F.2d at 548–49. *See also Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 301 (5th Cir. 2008) (citations omitted); *Brown*, 410 F.3d at 171.
[31] *Brown*, 410 F.3d at 174.
[32] *Id.* at 175.
[33] *Id.* at 174 (citing *Vitcovich v. OCEAN ROVER, O.N.*, 106 F.3d 411 (9th Cir. 1997)).
[34] *See generally* R. Doc. 48-1. The Court notes that the details of Dennis' past medical treatment were not detailed in the parties' statement of uncontested facts; however, Dennis submitted the April 24, 2013, medical report, apparently conceding their authenticity and accuracy. *See* Rec. Doc. 48 at 2.

6

The report includes a "General Instructions" document also initialed by Dennis that clearly states "You have been given the following additional information: FRACTURE:ANKLE" and includes a "follow-up" instruction for Dennis to see an orthopedist.[35] ESS also points to the testimony of Dennis' treating doctors for his current injury, who note that the previous fracture did not heal properly and should have been surgically repaired.[36] ESS then points to medical questionnaires Dennis completed when seeking employment with ESS roughly fifteen months later, which asked Dennis to swear that the information he supplied was true "as in a court of law" and informed him that failure to respond truthfully could result in the loss of medical treatment and benefits.[37] Dennis marked "No" next to the question asking whether he had ever had "Broken Bones / Fractures /Dislocations."[38] On another questionnaire, Dennis denied ever having an injury to his feet or legs and generally denied having any type of prior injury.[39] ESS further argues that Dennis denied he had ever suffered an ankle fracture when asked by his treating physician, Dr. Robert Bostick ("Dr. Bostick").[40] Asserting that the concealment prong is an objective inquiry, ESS argues that Dennis clearly concealed his prior ankle fracture.[41]

Dennis argues that, regardless of what the medical report says, he believed at the time he suffered only an ankle sprain, and points to testimony of the doctors who have treated his current ankle injury supporting the conclusion that Dennis likely suffered both

---

[35] *Id.* at 12–13. The parties apparently agree that Dennis did not seek follow-up treatment with the orthopedist.
[36] R. Docs. 40-5 at 6–8 & 55-2 at 16
[37] *See* R. Doc. 40-4 at 28–31.
[38] *Id.* at 28.
[39] *Id.* at 30–30.
[40] R. Doc. 55-2 at 13–14.
[41] R. Doc. 55 at 11–12.

7

a high ankle sprain and a fracture.[42] Dennis asserts that the doctors' testimony also reveals that Dennis was forthcoming about the prior injury in general.[43] Dennis further argues that ESS has pointed to no evidence indicating his mobility was in any way limited while he worked for ESS or that he had intent to conceal his ankle fracture.[44]

The Court finds ESS has established that Dennis intentionally concealed or misrepresented the pre-existing injury to his ankle. ESS is correct that the intentional concealment prong of a *McCorpen* defense "is an essentially objective inquiry."[45] The Fifth Circuit has held that the "[f]ailure to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information satisfies the 'intentional concealment' requirement."[46] Dennis does not deny having previously received medical treatment for his right ankle or signing and initialing various portions of the medical report and general instructions clearly indicating that he had been diagnosed with a fracture. Dennis' failure to disclose the fracture when questionnaires he completed for ESS clearly elicited such information satisfies the intentional concealment requirement. The Court is not persuaded that Dennis' subjective belief he suffered only a sprain or his argument that he lacked actual intent to conceal is relevant to the Court's analysis, as the intentional concealment prong does not require an inquiry into subjective intent of the employee.[47]

---

[42] *See* R. Doc. 48 at 2; *see also* R. Doc. 60-1 at 4–5; R. Doc. 60-2 at 11.
[43] *Id.*
[44] R. Doc. 60 at 9.
[45] *See Ladnier v. REC Marine Logistics, L.L.C*, Civ. A. No. 14-1278, 2015 WL 3824382 at *2 (E.D.La. Jun. 19, 2015) (Morgan, J.).
[46] *See Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 174 (5th Cir. 2005).
[47] *Id.*

B. Materiality

The Court therefore moves to the second prong of *McCorpen.* ESS must show Dennis' misrepresentation or concealment was material to ESS' hiring decision. Information is considered material for purposes of the *McCorpen* defense when "an employer asks a specific medical question on an application, and . . . the inquiry is rationally related to the applicant's physical ability to perform his job duties."[48] If, however, a plaintiff shows he would have been hired regardless of whether the concealment was material, the employer losses on the second prong. The materiality prong of a *McCorpen* defense is an issue of fact.[49]

Dennis apparently concedes materiality, but argues he would have been hired despite the materiality of the questionnaire's inquiry about his past medical history.[50] Indeed, the record is clear that ESS specifically asked questions on the pre-employment questionnaires relating to broken bones and injuries to Dennis' feet and legs. Furthermore, ESS has provided a declaration of its HSEQ Coordinator, establishing that Dennis' utility hand position required extensive standing and walking and frequent climbing, balancing, stooping, kneeling and lifting.[51] It is clear that the questionnaire sought information about Dennis' medical history and health that was rationally related to Dennis' physical ability to serve as a utility hand. The declaration of ESS' HSEQ Coordinator states that, had Dennis disclosed his prior right ankle injury, ESS would have required Dennis to provide further medical information, such as medical records associated with the injury, which would have made clear that Dennis had previously

---

[48] *Id.* at 175.
[49] *See Cal Dive Intern., Inc. v. Grant*, Civ. A. No. 11-1657, 2013 WL 1099157 (Mar. 15, 2013) (Morgan, J.).
[50] *See* R. Doc. 60 at 11.
[51] R. Doc. 40-10.

9

suffered a fracture.[52] The declaration further states that ESS also would have required Dennis to undergo further evaluation and testing, before reaching a decision to hire him.[53]

Despite apparent materiality, Dennis argues that ESS would have hired him regardless of the past ankle injury, pointing to a statement in his conditional offer of employment and a statement in one of the questionnaires that ESS would have denied employment only if it was not possible for Dennis to perform the job with reasonable accommodations.[54] Dennis argues that ESS would have hired Dennis even if he had disclosed the past fracture, because he was still able to (and did) perform the essential functions of a utility hand up until the time of his alleged injury.[55]

The Court is not persuaded that Dennis has produced sufficient evidence to prove ESS would have hired him even if he had disclosed the prior fracture. The evidence is clear that Dennis not only previously fractured his ankle, but that the fracture healed improperly and should have been surgically repaired.[56] Dennis' argument that ESS would have made a reasonable accommodation based on representations in the questionnaire and conditional offer of employment is too speculative, particularly given that ESS has come forward with sufficient evidence demonstrating that it would have sought Dennis' medical records from the fracture and would have investigated and tested the improperly healed ankle further. As such, the Court concludes that ESS has satisfied the second prong of its *McCorpen* defense.

---

[52] *See id.*; R. Doc. 48-1.
[53] R. Doc. 40-10.
[54] *See* R. Doc. 40-4 at 28–31.
[55] *See* R. Doc. 60 at 12.
[56]

10

C. Causality

To establish the third element of a *McCorpen* defense, ESS must establish a connection between the concealed medical fact and the injury that led to the claim for maintenance and cure benefits. The present injury need not be identical to the previous injury. Instead, "[a]ll that is required is a causal link between the pre-existing disability that was concealed and the disability incurred during the voyage."[57] Causality can be established by showing that the previous injury and the new injury occurred in the same location on the body.[58] The inquiry is "whether the new injury is related to the old injury, irrespective of their root causes."[59]

In this case, the dispute boils down to whether Dennis' "high ankle" fracture relates to Dennis' current alleged "low ankle" injury. The Court is confronted with conflicting opinions regarding Dennis' current ankle injury. Dennis' first treating physician, Dr. David Rabalais ("Dr. Rabalais"), has testified that Dennis' fall irritated the prior fracture and "didn't cause the major problem [Dennis] has in his ankle."[60] Dr. Bostick, Dennis' currently treating physician, has testified it is his opinion that the two injuries are unrelated.[61] ESS would have the Court question the credibility of Dr. Bostick's medical opinion and Dennis' underlying statements to Dr. Bostick about his condition and thereby rely exclusively upon the testimony of Dr. Rabalais,[62] but ESS offers no support to show such a credibility determination—related to a genuine dispute of material fact—would be appropriate at the summary judgment phase. Without any clear authority for the Court

---

[57] *Brown*, 410 F.3d at 176 (internal quotation marks and citation omitted).
[58] *Id.*
[59] *Ladnier*, 2015 WL 3824382 at *5 (quoting *Johnson v. Cenac Towing, Inc.*, 410 F.3d 166, 176 (5th Cir. 2005)).
[60] R. Doc. 40-5 at 13.
[61] R. Doc. 60-2 at 6–8.
[62] R. Doc. 55 at 9–10.

11

to conclude that the ankle generally is a singular location on the body and faced with conflicting evidence regarding whether Dennis' low-ankle injury resulted from the past ankle fracture, the Court cannot conclude that ESS has established that there is no genuine dispute of material fact regarding causality in this case. As such, the Court cannot conclude that ESS has established a valid *McCorpen* defense as a matter of law.

## II. Maximum Medical Cure

The right to maintenance and cure terminates when a seaman reaches "maximum possible cure," meaning it is probable that further treatment will not better the seaman's condition.[63] As ESS apparently concedes,[64] ESS' argument that it is no longer obligated to pay Dennis further maintenance and cure depends upon a finding that ESS is entitled to a *McCorpen* defense regarding Dennis' alleged ankle injury.[65] The Court has concluded that ESS is not entitled to summary judgment on its *McCorpen* defense regarding Dennis' alleged ankle. Furthermore, while the parties do not appear to dispute that Dr. Rand Voorhies ("Dr. Voorhies")—the doctor treating Dennis for his neck and back—has not recommended surgery,[66] the record is unclear on whether either Dr. Voorhies or Dr. Bostick has actually cleared Dennis to return to work.[67] As such, genuine disputes of material fact preclude the Court from ruling that ESS is no longer obligated to pay Dennis further maintenance and cure.

## III. Punitive Damages

ESS argues that Dennis cannot state a claim for punitive damages related to ESS' alleged failure to provide maintenance and cure, because Dr. Rabalais concluded Dennis

---

[63] *Boudreaux v. U.S.*, 280 F.3d 461, 468 (5th Cir. 2002).
[64] R. Doc. 55 at 15.
[65] *See* R. Doc. 55 at 15.
[66] *See* R. Doc. 55 at 15; R. Doc. 60 at 19–20.
[67] *See* R. Doc. 40-6.

12

had reached maximum medical cure and because ESS reasonably concluded that it has a viable *McCorpen* defense on Dennis' alleged ankle injury and has otherwise provided maintenance and cure. Each claim for punitive damages "is to be evaluated on its own facts," though there is precedent supporting punitive damages where an employer was lax in investigating the seaman's maintenance and cure claim or where the employer failed to reinstate benefits following the diagnosis of an ailment previously not determined medically.[68] ESS principally supports its argument by reference to an unpublished, per curiam Fifth Circuit decision, *MNM Boats, Inc. v. Johnson*, 248 F.3d 1139, 2001 WL 85860 (5th Cir. 2001). The decision, at most, establishes that a seaman does not have a *per se* right to punitive damages when an employer decides not to pay benefits in light of a dispute between physicians over the seaman's condition.[69]

      The Court concludes that the record is not sufficiently clear that ESS conducted a sufficient investigation of Dennis' maintenance and cure claim before deciding not to pay benefits related to Dennis' alleged ankle injury. The record does not make clear the extent to which ESS investigated Dennis' claim in light of the medical evaluation and surgery recommendation of Dr. Bostick, but rather indicates that ESS made its decision not to pay benefits for Dennis' alleged ankle injury solely on Dr. Rabalais' earlier determination that Dennis had reached medical maximum cure.[70] On this record, the Court cannot conclude as a matter of law that Dennis is not entitled to punitive damages.

Accordingly,

---

[68] *See Breese*, 823 F.2d 100, 103 (5th Cir. 1987).
[69] *See MNM Boats*, 2001 WL 85860 at *1.
[70] *See* R. Doc. 55 at 8.

had reached maximum medical cure and because ESS reasonably concluded that it has a viable *McCorpen* defense on Dennis' alleged ankle injury and has otherwise provided maintenance and cure. Each claim for punitive damages "is to be evaluated on its own facts," though there is precedent supporting punitive damages where an employer was lax in investigating the seaman's maintenance and cure claim or where the employer failed to reinstate benefits following the diagnosis of an ailment previously not determined medically.[68] ESS principally supports its argument by reference to an unpublished, per curiam Fifth Circuit decision, *MNM Boats, Inc. v. Johnson*, 248 F.3d 1139, 2001 WL 85860 (5th Cir. 2001). The decision, at most, establishes that a seaman does not have a *per se* right to punitive damages when an employer decides not to pay benefits in light of a dispute between physicians over the seaman's condition.[69]

    The Court concludes that the record is not sufficiently clear that ESS conducted a sufficient investigation of Dennis' maintenance and cure claim before deciding not to pay benefits related to Dennis' alleged ankle injury. The record does not make clear the extent to which ESS investigated Dennis' claim in light of the medical evaluation and surgery recommendation of Dr. Bostick, but rather indicates that ESS made its decision not to pay benefits for Dennis' alleged ankle injury solely on Dr. Rabalais' earlier determination that Dennis had reached medical maximum cure.[70] On this record, the Court cannot conclude as a matter of law that Dennis is not entitled to punitive damages.

Accordingly,

---

[68] *See Breese*, 823 F.2d 100, 103 (5th Cir. 1987).
[69] *See MNM Boats*, 2001 WL 85860 at *1.
[70] *See* R. Doc. 55 at 8.

**IT IS ORDERED** that ESS' motion for partial summary judgment[71] be and hereby is **DENIED**.

New Orleans, Louisiana, this __12th__ day of July, 2016.

*Susie Morgan*
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**

---

[71] R. Doc. 40